FILED

February 5, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 7:40 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Jim Collier | ) | Docket No.: 2015-01-0205 |
|     Employee, | ) | |
| v. | ) | State File Number: 57621-2015 |
| Walden Security | ) | |
|     Employer, | ) | Judge Audrey A. Headrick |
| And | ) | |
| Old Republic General Ins. Co. | ) | |
|     Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING
## REQUESTED BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Jim Collier, on December 3, 2015. On January 6, 2016, the Court held an in-person, evidentiary hearing. The central legal issue is whether Mr. Collier is likely to prevail at a hearing on the merits. Walden Security disputes Mr. Collier is entitled to any benefits beyond a panel of physicians. For the reasons set forth below, the Court finds Mr. Collier is not entitled to the requested benefits.[1]

### History of Claim

Mr. Collier is a forty-seven-year-old resident of Catoosa County, Georgia. (T.R. 1.) He worked for Walden as an unarmed security officer. Mr. Collier seeks medical benefits and past and ongoing temporary disability benefits for an alleged back injury that occurred on April 13, 2015, during an altercation with a patient at Erlanger Hospital.

Mr. Collier testified that on April 13, 2015, a male patient was dropped off in the front of the emergency room. The patient was placed in an examining room. Mr. Collier stated hospital staff called a police officer into the room because the patient was irate. Mr. Collier stated he also entered the examining room because the patient kept trying to

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

grab the officer's gun, and the officer needed help. He stated the patient was fighting them, so they tried to restrain him, and he pulled the patient back when he put his hand on the police officer's gun. He and the patient fell over a gurney with the patient landing on top of him. Mr. Collier stated he held the patient in a headlock and placed him in restraints.

Mr. Collier testified his legs started going numb while he was on the floor with the patient. He stated his supervisor, Raymond Gross, was in the examining room during the incident with the patient. Mr. Collier stated he told Mr. Gross that his back was killing him. At the direction of Mr. Gross, Mr. Collier sat in a chair by the nurse's desk for the rest of his shift. Mr. Collier testified he tried to go into work the following day; however, he told Mr. Gross his back was killing him and left almost immediately after arriving.

Mr. Collier testified he called Mr. Gross on April 15, 2015, and told him he would not be at work because he could not get out of bed. On the same day, Mr. Collier spoke with Phil, an Erlanger Director, and told him he was at Georgia Pain Management. He stated he told Phil he was a walk-in patient, and his lower back and legs were numb. Additionally, Mr. Collier testified that on the same day he gave Aaron Parcel, Assistant Director of Security at Erlanger, a copy of the April 15, 2015 office note from Georgia Pain Management. Mr. Collier stated the doctor at Georgia Pain Management wanted him to have a "nerve burn," which he did not have performed. Mr. Collier testified he called in and updated Walden on his medical condition on April 16-17, 2015,

Mr. Collier acknowledged he had a prior back injury "a long time ago." However, he stated that in the days prior to the incident on April 13, 2015, he was not really having pain and numbness in his legs. Mr. Collier also stated he was able to get around with a cane. Mr. Collier testified he had numbness and burning in both legs after the incident on April 13, 2015.

Mr. Collier testified he spoke to Mr. Gross and to Mr. Parcel, and requested that Walden send him to a doctor. He stated Mr. Parcel told him to contact Human Resources. Mr. Collier stated Walden never offered to send him to a doctor prior to the panel provided in December 2015. (T.R. 8.) He testified Walden has not paid him any temporary disability benefits, and he has not worked since April 13, 2015.

On cross-examination, Mr. Collier testified he received a copy of the Walden Security Handbook and signed a Statement of Receipt. (Ex. 4 and 5.) However, Mr. Collier stated he never read the handbook. Mr. Collier acknowledged he never completed an incident report for Walden as required by Walden's handbook. He stated he did not know he needed to report the injury to human resources until Mr. Parcel told him to do so several months later. Mr. Collier could not state that any doctor told him his complaints since April 13, 2015, are related to the incident. He was also unable to state any doctor told him he suffered an injury on April 13, 2015. Mr. Collier stated he saw

2

his own doctors because Walden never sent him to a doctor. He stated that, at the time of the incident, he told Mr. Gross, "I've hurt my back." Mr. Collier also stated he told Mr. Gross, "[i]t's killing me." He acknowledged that, other than Georgia Pain Management taking him off from work on April 15, 2015, for two days, no other doctor has taken him off from work. Mr. Collier also acknowledged the only medical note he gave to Walden was the April 15, 2015 office note.

Mr. Collier further testified regarding his prior workers' compensation injury that occurred while working at Shaw Industries, which caused him back pain as well as numbness and tingling in his left leg. He stated he treated with Dr. Michael Pare, who performed surgery on his low back in October 2006. Dr. Pare's office note dated January 5, 2007, stated Mr. Collier's back "pain irradiates to the right leg," and "[t]he severity of the condition is incapacitating." (Ex. 6.) However, Mr. Collier vigorously denied he experienced any pain or numbness in his right leg until after the incident at Walden on April 13, 2015. He stated Dr. Pare referred him to pain management due to his post-surgical left-leg pain.

Mr. Collier testified he was a patient at Georgia Pain Management prior to the incident on April 13, 2015. He went there every month to obtain prescriptions for his pain. Mr. Collier testified he took Hydrocodone and morphine prior to April 13, 2015, and afterward he began taking Neurontin. When asked why he did not seek emergency treatment at Erlanger since the injury occurred there and he testified he felt immediate pain, Mr. Collier stated he hoped the pain would go away. He also stated he thought the patients at the emergency room might need treatment more than he did.

During cross-examination, defense counsel questioned Mr. Collier about his medical treatment with Dr. Stephen Dreskin at Tennessee Valley Pain Management. (Ex. 2.) Mr. Collier first saw Dr. Dreskin on May 28, 2015. The office note stated he switched from Georgia Pain Management because he claimed he could "no longer afford to go their [sic]." (Ex. 2.) It also stated Dr. Scott Hodges referred Mr. Collier to Dr. Dreskin for his low back pain.[2] The "Chief Complaint" given was low back pain. Mr. Collier complained of sharp, burning pain associated with numbness and radiating down both lower extremities. Under "Duration," it states "2005." Under "Context," it states "S/P war wound." During his testimony, Mr. Collier denied stating his back problem resulted from a war wound.

The office note further stated Mr. Collier "reports no specific trauma pain level gradually worsened over the years." (Ex. 2.) The record also noted Mr. Collier "reports multiple flare ups for the past few years and pain has become more progressive and problematic for him/her this past year." Mr. Collier testified he told Dr. Dreskin about the injury at Walden, although the record contains no reference to it. Dr. Dreskin's

---

[2] The parties did not introduce medical records of Dr. Hodges into evidence.

3

diagnoses were spinal stenosis of lumbar region; lumbosacral radiculitis; lumbar spondylosis with myelopathy; muscle pain; and, drug dependence. The June 11, 2015, office note was very similar to the May 28, 2015 office note and indicated Mr. Collier still complained of burning and numbness in his feet. (Ex. 2.)

On July 21, 2015, Mr. Collier returned to Dr. Dreskin. (Ex. 2.) The office note contained the following:

> Pt requesting return to work for light duty. Pt had an injury at work in April that exacerbated injury while in the service and is pending workers comp. Ortho MD at Sports Medicine signed original papers to be out of work. Per pt, surgery and PT are not an option and will have to be on long-term pain meds, which is why he was referred to us. Informed pt he will need to follow up with that MD.

Mr. Collier disputed Dr. Dreskin's reference to a war/service injury. Instead, he testified his original back injury was due to a work injury at Shaw Industries.

On August 27, 2015, Mr. Collier saw Dr. Dreskin. (Ex. 2.) He again complained of low back pain that radiated to both lower extremities. This office note listed "Duration" as April 13, 2015. Under "Context," it listed "s/p workmans comp. injury." Dr. Dreskin went on to state the following history given by Mr. Collier:

> Patient states he was working for Walden Security at Erlanger assigned to zone 1. He states he was reassigned to the ER. He reports a patient came in through the ER that appeared to be high and tried to grab a police officer's weapon. Patient tried to help the police officer get the patient under control. While they were trying to handcuff the patient, he reports they all flipped over the gurney and the patient landed on him.

The office note further stated:

> This is patient's first work comp visit. Patient states since his work injury he has been filing his visits and medications under his private insurance. Patient states he was previously treated by Center for Sports Medicine until the state and Department of Labor got involved, allowing him to be referred to pain management.
>
> . . .
>
> Patient states when the injury occurred, the pain radiated down both legs, but the (R) leg was the worst. Now patient states the [sic] he has more pain radiating down his left leg and reports increased numbness in his left foot and toes.

4

During the August 27, 2015 visit, Dr. Dreskin also noted Mr. Collier used a cane.

The last medical record office note admitted into evidence was Dr. Dreskin's September 24, 2015 record. (Ex. 2.) At that visit, Mr. Collier complained of new right leg weakness and new pain. Dr. Dreskin again noted Mr. Collier used a cane. His diagnoses were lumbosacral radiculitis, muscle pain, and drug dependence. Dr. Dreskin also stated the following:

> Reviewed LC[3] results from previous visit patient negative prescribed Hydrocodone and positive ETOH testing.[4] . . . Due to negative results, I would no longer feel comfortable prescribing Hydrocodone. Patient given a two week supply of MS Contin 15 mg TID #45. Urine drug screen obtained at today's visit POCT[5] (+) OPI[6] only. Will send to LC for confirmation. Patient understands if results come back inappropriate he will need to follow up with another pain management office. He was given a list of other area pain management office in the event that he needs to transition.

During cross-examination, defense counsel presented Mr. Collier with a letter dated September 16, 2015, from Paige Crumbliss, H.R. Director at Walden. The letter indicates a lack of communication by Mr. Collier in response to Walden's need of a doctor's note documenting work restrictions. In the letter, Ms. Crumbliss stated Walden would terminate Mr. Collier's employment if he did not communicate with Walden by September 21, 2015.

Mr. Collier initially testified he received the September 16, 2015 letter from Ms. Crumbliss. He stated he received it after he filed his claim with the State on April 13, 2015, and after Michelle Denius, H.R. Manger, became involved. Shortly thereafter, Mr. Collier denied receiving the letter because: (1) He stated the street address is incorrect; and, (2) His son, John Collier, who did not live with him at the time, signed for the letter. On re-direct examination, Mr. Collier stated his correct address is 1733 Colbert Hollow Road. Walden used 1733 Colbert Road as the street address.[7]

---

[3] Dr. Dreskin's records indicate "LC" is the abbreviation for a liquid chromatography/mass spectrometry machine, which he uses if a urine sample is inappropriate.

[4] "ETOH" is the abbreviation for alcohol. Medicinenet.com, http://www.medicinenet.com. (last visited Feb. 2, 2016).

[5] "POCT" is the abbreviation for point-of-care testing, which is testing performed at the time and place the patient is treated. Wikipedia.org, https://en.wikipedia.org. (last visited Feb. 2, 2016).

[6] "OPI" is the abbreviation for opiates. Rapiddetect.com, https://rapiddetect.com. (last visited Feb. 2, 2016).

[7] Later in the hearing, Michelle Denius, H.R. Manager for Walden, testified. She properly identified and authenticated the letter as a business record kept by Walden. Counsel for Mr. Collier objected to the admission of this letter into evidence on the basis that Ms. Denius did not bring Walden's entire file on Mr. Collier and instead only brought select records. However, pursuant to Rule 803(6) of the Tennessee Rules of Evidence, the Court admitted the letter into evidence as Exhibit 7. The Court is not aware of any requirement on a party to produce a file

During direct-examination of Michelle Denius, H.R. Manager for Walden, she testified Mr. Collier "visited" Walden on September 18, 2015, and brought the September 16, 2015 letter with him from Ms. Crumbliss. She stated Mr. Collier wanted to know what the letter was about, and she told him Walden needed to hear back from him. Nevertheless, as of the expedited hearing in this matter, Walden had not terminated Mr. Collier.

During Ms. Denius' testimony, she stated Walden hired Mr. Collier in February 2015. Mr. Collier's job at Walden was not a light duty position, and Walden does not have any light duty positions. She stated that on April 13, 2015, Mr. Collier completed his shift. Ms. Denius stated she never received an incident report regarding that date. Walden's protocol as stated in its handbook is for an employee to immediately notify his supervisor or manager if he is injured and immediately complete an incident report. She further testified Mr. Collier's last day of work with Walden was April 14, 2015.

Ms. Denius testified she attempted to reach Mr. Collier several times by telephone to request documents stating he could return to work. She stated Mr. Collier told her his wife would fax or drop of the notes, but she never received them. Ms. Denius stated Mr. Collier did not provide her with any medical documentation indicating he sustained an injury at Walden.

On cross-examination, Ms. Denius stated she oversees over 700 officers. She testified no one told her not to bring her file regarding Mr. Collier. Ms. Denius relied upon a timeline of events regarding Mr. Collier that she prepared in approximately September or October of 2015 in order to refresh her memory. However, Walden did not offer the timeline into evidence.

Ms. Denius testified Walden keeps the incident reports on-site at Erlanger in the office where Mr. Collier clocked in and out. She stated Mr. Collier's supervisor, Mr. Gross, completed a report. However, Ms. Denius stated the report only documents the incident that occurred and does not reference an injury. She acknowledged she did not know what Mr. Collier told Mr. Gross on April 13, 2015, and she had no documentation to refute Mr. Collier's testimony that he gave Mr. Gross notice of a work injury on that date. Nevertheless, Ms. Denius testified she knew on April 28, 2015, that Mr. Collier was claiming a work-related injury. She acknowledged she did not mail Walden's required incident report form to Mr. Collier, and she did not mail him a panel of physicians.

During cross-examination, Ms. Denius testified Mr. Collier was high on pain pills

---

in its entirety in order for a record to be admitted into evidence.

and struggled to stand when he visited Walden on September 18, 2015. She also stated he had a cane. Ms. Denius confirmed that Walden had no light duty work available. She also confirmed Mr. Collier could not work with a cane. Ms. Denius further stated she did not call in a workers' compensation report until August 3, 2015, although she knew on April 28, 2015, that he was claiming a work-related injury. On re-direct, Ms. Denius clarified that Mr. Collier did not ever directly indicate to her he was claiming a work-related injury, but that his supervisor had informed her of his claim. However, she stated he talked about pain in his left leg at one point.

On cross-examination, Ms. Denius testified regarding dates listed in her summary of events. She testified Mr. Collier spoke to Mr. Parcel, Assistant Director of Security at Erlanger, on April 28, 2015, and told him he wanted to file a workers' compensation claim. Ms. Denius stated she called Mr. Collier on April 29, 2015. She stated she spoke with Mr. Collier on May 12, 2015, and he requested to return to work. Ms. Denius asked him to provide a doctor's note releasing him to return to work. On May 18, 2015, she stated she spoke with Mr. Collier to tell him she had not received a doctor's note, and Mr. Collier told her he would fax it to her.[8]

During cross-examination, Ms. Denius testified regarding a letter dated June 2, 2015, that she sent to Mr. Collier. (Ex. 8.) In the letter, Ms. Denius stated she made "[m]ultiple attempts to reach him between April 16, 2015, and May 7, 2015." She acknowledged she made a mistake and actually only made one attempt to reach him. Ms. Denius also acknowledged she did not have all of Mr. Parcell's notes when she prepared her letter dated June 2, 2015. She testified she did not know what Mr. Collier's injury was, and she did not ask. In the letter, Ms. Denius stated she was seeking return-to-work information. She also stated she reminded Mr. Collier to complete an incident report.

Mr. Collier filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on September 3, 2015. (T.R. 2.) Mr. Collier filed a Request for Initial Hearing on October 30, 2015. (T.R. 3.) During the initial hearing, the parties agreed to schedule an expedited hearing. An Agreed Order Setting Case for Expedited Hearing was entered on December 3, 2015. (T.R. 5.) Mr. Collier filed a Request for Expedited Hearing on the same day. (T.R. 4.)

Mr. Collier asks the Court to order medical benefits as well as past and ongoing

---

[8] Counsel for Walden sought to introduce a letter dated June 2, 2015, from Ms. Denius to Mr. Collier. Ms. Denius properly identified and authenticated the letter. Counsel for Mr. Collier objected to the letter on the basis that he did not raise the dates referenced in the letter on cross-examination. He also argued that the letter does not fall within the business record exception because defense counsel produced the letter from his file. However, the Court admits the letter into evidence as Exhibit 8. A review of the testimony indicates that Mr. Collier's attorney did raise the dates addressed in the letter on cross-examination. Additionally, the letter produced is what it purports to be, which is a document prepared and kept by Walden as a business record.

temporary disability benefits from April 14, 2015, forward. He argues he had an on-the-job injury that he immediately reported to his supervisor; he has symptoms he never had before; and, Walden did not provide him with a panel of physicians until December 2015. Mr. Collier argues the late-offered panel does not comply with the statute because it did not include a chiropractor, and the physicians on the panel are not in his community. (T.R. 8.) Further, Mr. Collier argues he has not worked since his injury on April 13, 2015.

Walden asks the Court to deny Mr. Collier's request on several bases. First, Walden argues Mr. Collier did not provide notice of an injury. Second, it argues the record is devoid of any evidence showing a physician opined that Mr. Collier sustained a new injury. Walden asserts it provided a panel of physicians to Mr. Collier in December 2015, and it can provide a new panel to Mr. Collier if necessary. (T.R. 8.) Finally, Walden argues Mr. Collier is not entitled to any temporary disability benefits because the record reflects that his doctor only took him off work for two days.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[9] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a

---

[9] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

### *Mr. Collier Has Not Demonstrated a Likelihood of Success On the Merits at Trial*

The Court will first address the notice defense raised by Walden. Tennessee Code Annotated section 50-6-201(a)(1) (2015) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . within thirty (30) days after the occurrence of the accident." In the present case, Walden acknowledged it received notice that Mr. Collier was reporting a workers' compensation claim. Ms. Denius testified Mr. Collier spoke to Mr. Parcel, Assistant Director of Security at Erlanger, on April 28, 2015, and told him he wanted to file a workers' compensation claim. She also acknowledged she called Mr. Collier on April 29, 2015, because he reported a workers' compensation claim. Additionally, Mr. Collier's unrebutted testimony was that he provided immediate verbal notice to Walden. Although Walden has a policy that requires employees to complete an internal incident report immediately after an injury occurs, the Workers' Compensation Law has no such requirement. Since Mr. Collier alleged he sustained a work-related injury on April 13, 2015, and Walden had notice of the alleged injury on or before April 28, 2015, Walden's argument regarding lack of notice is without merit.

The Court next considers Walden's position that no physician has opined Mr. Collier, who has a pre-existing back condition, sustained a new injury. The Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

> In sum, to qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller v. Lowe's Home Centers, Inc.,* No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd.

9

LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).

The first mention in the medical records of a work-related injury is in Dr. Dreskin's July 21, 2015 office note. (Ex. 2.) At that time, Mr. Collier gave a history of sustaining "an injury at work in April that exacerbated injury while in the service and is pending workers comp." On August 27, 2015, and in subsequent office notes thereafter, Dr. Dreskin documents that Mr. Collier gave a history of injuring his back on April 13, 2015, when he and a patient flipped over a gurney with the patient landing on him. During the August 27, 2015 office note, Dr. Dreskin documented that Mr. Collier "states when the injury occurred, the pain radiated down both legs, but the (R) leg was the worst. Now patient states the [sic] he has more pain radiating down his left leg and reports increased numbness in his left foot and toes." Notwithstanding Dr. Dreskin's recitations of the histories given by Mr. Collier, Dr. Dreskin does not provide any medical opinion that the incident on April 13, 2015, "contributed more than fifty percent in causing the aggravation, considering all causes." In fact, Dr. Dreskin does not suggest any medical causation opinion at all regarding Mr. Collier's back condition.

Mr. Collier testified he experienced the new symptom of right leg pain and numbness after the April 13, 2015, incident at Walden. However, Dr. Pare's January 5, 2007 office note states Mr. Collier complained that his back "pain irradiates to the right leg," and "[t]he severity of the condition is incapacitating." (Ex. 6.) When Mr. Collier first saw Dr. Dreskin on May 28, 2015, he indicated he began suffering from low back pain radiating down both lower extremities in 2005 due to a war wound. (Ex. 2.) At that visit, Mr. Collier also reported, "no specific trauma pain level gradually worsened over the years." Although Mr. Collier vigorously denied the accuracy of Dr. Pare's January 5, 2007 office note, as well as Dr. Dreskin's office notes, the Court declines to overlook the medical histories given by Mr. Collier to two different physicians in an eight-year span.

Based upon the foregoing, it appears unlikely that Mr. Collier "would likely establish, to a reasonable degree of medical certainty, that the work accident [on April 13, 2015] contributed more than fifty percent in causing the aggravation, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B)-(C) (2015). Likewise, as stated by the Workers' Compensation Appeals Board, "[Tennessee Code Annotated section 50-6-204(a)(1)(A)] limits an employer's duty to provide medical benefits to instances where the employee sustained an injury by accident as defined in the statute." *Hardin v. Dewayne's Quality Metals*, 2015-07-0067, 2015 TN Wrk. Comp. App. Bd. LEXIS 45, at *7 (Tenn. Workers' Comp. App. Bd. Nov. 18, 2015).

The Court finds the evidence presented does not satisfy the statutory requirements addressed in *Miller, supra*. Based upon this finding, the issue regarding temporary disability benefits is moot. Consequently, Mr. Collier has not demonstrated he is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED:**

1. Mr. Collier's requested relief is denied.
2. This matter is set for an Initial Hearing on March 21, 2016, at 10:00 a.m., ET.

**ENTERED this the 5th day of February, 2016.**

_Audrey Headrick_
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Jim Collier
2. Table of Contents of Medical Records of Tennessee Valley Pain Management
3. Wage Statement
4. Walden Security Handbook for Security Officers and Other Field Personnel consisting of two pages (the coversheet and Page 23)
5. Statement of Receipt
6. January 5, 2007 office note of Dr. Pare
7. Correspondence from Paige Crumbliss, H.R. Director at Walden, to Mr. Collier, dated September 16, 2015
8. Correspondence from Michelle Denius, H.R. Manager at Walden, to Mr. Collier, dated June 2, 2015

Marked for Identification Purposes Only:
1. Cell phone records of Jim Collier

Technical record:[10]
1. Three Petitions for Benefit Determination, filed July 27, 2015, October 19, 2015, and November 24, 2015
2. Dispute Certification Notice, September 3, 2015
3. Request for Initial Hearing, October 30, 2015
4. Request for Expedited Hearing, December 3, 2015
5. Agreed Order Setting Case for Expedited Hearing, December 3, 2015
6. Notice of Scheduled Hearing, December 8, 2015
7. Employer and Insurer's Response to Request for Expedited Hearing by Jim Collier, December 9, 2015
8. Notice of Filing of Tendered C-42 Panel of Physicians to Counsel for Jim Collier, December 23, 2015
9. Notice of Filing of Medical Records for Evidence, December 23, 2015

---

[10] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 5th day of February, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Ronnie J. Berke | | | | | X | ronnie@berkeattys.com |
| Bruce E. Williams | | | | | X | bwilliams@shuttleworthwilliams.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov